UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


WHITE OAK REALTY, LLC                          CIVIL ACTION


VERSUS                                         NO: 13–4761


UNITED STATES ARMY CORP
OF ENGINEERS, ET AL.                           SECTION "H"(3)


<u>ORDER AND REASONS</u>

Before the Court is Defendants' Motion for Judgment on the Pleadings
(Doc. 84).  For the following reasons, the Motion is GRANTED IN PART.
Plaintiffs' Substantive Due Process claims are DISMISSED.


BACKGROUND

This is a civil action for declaratory and injunctive relief.  The plaintiffs
are White Oak Realty, LLC and Citrus Realty, LLC.  The defendants are the
United States Corps of Engineers (the "Corps") and various Corps employees.

1

The dispute involves mitigation requirements imposed by the Corps on a tract of land in Southeast Louisiana ("Idlewood Stage 2") jointly owned by Plaintiffs.

In response to the devastation caused by Hurricanes Katrina and Rita, Congress authorized the Corps to undertake a series of projects collectively known as the Hurricane and Storm Damage Risk Reduction System ("HSDRRS"). One of these projects involves the use of soil and clay ("borrow material") to reinforce levees and floodwalls in the Gulf South. Under the applicable statutes and regulations, the Corps determines whether a particular location is a suitable source of borrow material and if so whether mitigation of losses to fish and wildlife is necessary.[1]

At some point in 2010, Plaintiffs discovered the presence of borrow material in Idlewood Stage 2.[2] They subsequently filed a "suitability determination" with the Corps to confirm the borrow material could be used in HSDRRS projects. In October 2010, the Corps issued a preliminary report approving the use of borrow material from Idlewood Stage 2 and nine other sites.[3] The report found that the excavation of borrow material from Idlewood Stage 2 would cause "unavoidable impacts" to the environment.[4] Accordingly, if Idlewood Stage 2 were ultimately approved for HSDRRS projects, the landowner or contractor would be required to provide compensatory mitigation

---

[1] *See* 33 U.S.C. § 2283.

[2] The complaint is unclear as to when Plaintiffs discovered the borrow material.

[3] *See* Doc. 31-1.

[4] *Id.* at p. 15.

prior to excavation by purchasing credits from a mitigation bank.[5]

In a letter dated November 4, 2010, the Corps notified Plaintiffs that Idlewood Stage 2 "appears to be acceptable for use as a source" of borrow material.[6] The letter confirmed the preliminary report's determination that excavation would harm the environment.[7] The letter required Plaintiffs to "provide proof of mitigation to the Corps[] . . . prior to excavation."[8] The Corps issued a similar letter on April 14, 2011, reaffirming the requirement that Plaintiffs provide mitigation.[9] The letter informed Plaintiffs that their "compensatory mitigation requirements may be met" by obtaining credits from select mitigation banks.[10]

Plaintiffs subsequently hired Mitigation Strategies, LLC ("Mitigation Strategies") hoping to convince the Corps of the "legal and factual errors underlying [its] mitigation requirements."[11] Mitigation Strategies argued to the Corps on numerous occasions that mitigation was neither necessary nor appropriate under the law. In the alternative, if mitigation was required, Mitigation Strategies argued the law required in-kind mitigation, rather than the purchase of credits from mitigation banks.

The Corps disagreed. On June 24, 2011, the Corps informed Plaintiffs that

[5] *Id.*

[6] Doc. 31-3 at p. 2.

[7] *Id.* at p. 3.

[8] *Id.*

[9] *See* Doc. 31-5.

[10] *Id.* at p. 2.

[11] Doc. 31 at ¶64.

3

mitigation is "require[d] [to] be accomplished through the purchase of bank credits."[12]  Mitigation Strategies responded to this letter with further efforts to convince the Corps that mitigation was unnecessary.  These efforts culminated in a February 20, 2013 letter from the District Commander.[13]  The letter reiterated the Corps's previous position that borrow material from Idlewood Stage 2 could not be excavated for use in HSDRRS projects until credits were purchased from a mitigation bank (the "Mitigation Requirement").[14]

Plaintiffs filed this suit against the Corps and various Corps employees on June 10, 2013.  They contend that the Water Resource Development Act ("WRDA"), 33 U.S.C. § 2201 *et seq.*, does not authorize mitigation for Idlewood Stage 2 or alternatively that the WRDA does not authorize the Corps to mandate the purchase of mitigation credits as the sole form of compensatory mitigation. Plaintiffs also assert claims under the Takings Clause and the Due Process Clause of the Fifth Amendment.

In this Motion, Defendants move for a partial judgment on the pleadings, arguing that this Court lacks jurisdiction over Plaintiffs' Fifth Amendment takings and substantive due process claims.  This Court will address each of Defendants' arguments in turn.

## LEGAL STANDARD

Rule 12(c) provides that a party may move for judgment on the pleadings

---

[12] Doc. 31-6 at p. 2.

[13] *See* Doc. 17-7.

[14] *See id.*

after pleadings are closed but early enough not to delay trial.[15] The standard for determining a Rule 12(c) motion based on a lack of subject matter jurisdiction is the same as a Rule 12(b)(1) motion to dismiss.[16]

A Rule 12(b)(1) motion challenges the subject matter jurisdiction of a federal district court. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[17] In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts.[18] The proponent of federal court jurisdiction—in this case, the Plaintiff—bears the burden of establishing subject matter jurisdiction.[18]

## LAW AND ANALYSIS

Defendants assert three grounds on which they allege that this Court lacks jurisdiction to hear Plaintiffs' takings and substantive due process claims. First, Defendants allege that Plaintiffs' takings claims are barred because the United States has not waived its sovereign immunity from claims seeking declaratory and injunctive relief from a takings claim if just compensation is

---

[15] Fed. R. Civ. P. 12(c) (2014).

[16] 5C ALAN WRIGHT & ARTHUR MILLER, FED. PRAC. & PROC. CIV. § 1367 (3d ed.).

[17] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

[18] *Den Norske Stats Oljesels kap As v. Heere MacVof*, 241 F.3d 420, 424 (5th Cir. 2001).

[18] *See Physicians Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012).

available.  Second, Defendants allege that federal courts do not have jurisdiction to grant declaratory or injunctive relief under the Takings Clause.  Third, Defendants argue that "Plaintiffs' substantive due process claim is jurisdictionally barred because it is subsumed by the takings claim and is therefore premature." This Court will address each argument in turn.

At the outset, the Court notes that it declines Plaintiffs' request to defer ruling on this matter.  "Federal courts are courts of limited jurisdiction" and as such, must consider jurisdictional attacks before any attack on the merits.[19] Accordingly, this Court will address whether it has jurisdiction to hear Plaintiffs' takings and due process claims.

### A.  The Takings Claim

The Takings Clause of the Fifth Amendment prohibits the government from taking private property for public use without just compensation.[20] Plaintiffs allege the Corps's actions constitute a regulatory taking.  A "regulatory taking" occurs when government regulation of private property is "so onerous that its effect is tantamount to a direct appropriation or ouster."[21] Plaintiffs seek a declaratory judgment that "the Corps's actions violate the Takings Clause of the Constitution's Fifth Amendment" and an injunction allowing Plaintiffs to

---

[19] *In re FEMA Trailer Formaldehyde Products Liab. Litig. (Mississippi Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012).

[20] U.S. Const. amend. V, cl.4.  The purpose of the Takings Clause is to prevent the government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

[21] *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005).

forgo the Corps's Mitigation Requirement.[22]   Plaintiffs' Second Amended Complaint expressly states that they "do not claim monetary damages as just compensation for a taking" because they have not yet complied with the Corps's requirement to purchase mitigation credits.

Defendants argue that the only available remedy for a Fifth Amendment takings claim is "just compensation" and that the United States has not waived its sovereign immunity from claims seeking declaratory or injunctive relief from a taking.   They also argue that, under the Tucker and Little Tucker Acts, federal courts do not have jurisdiction to grant declaratory or injunctive relief under the Takings Clause.

The Tucker Act grants the United States Court of Federal Claims jurisdiction over claims for money damages "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."[23] Likewise, the Little Tucker Act states that:

> the district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of . . . any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort . . . .[24]

---

[22] Doc. 31, p. 30.
[23] 28 U.S.C. § 1491.
[24] 28 U.S.C. § 1346.

Neither of these statutes create substantive rights, "but are simply jurisdictional provisions that operate to waive sovereign immunity for claims premised on other sources of law."[25]

The Supreme Court has made it clear that both the Tucker and Little Tucker Acts provide the United States' "consent to suit for certain money-damages claims."[26]   Indeed, "[t]he Court of Claims was established, and the Tucker Act enacted, to open a judicial avenue for certain monetary claims against the United States."[27]  The Acts have "long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States."[28]  Plaintiffs do not seek money damages on their takings claim. Instead, they seek both a declaration that the Corps has violated the Takings Clause by imposing an unconstitutional condition and an injunction permitting Plaintiffs to furnish borrow material to HSDRRS projects without such conditions.  Plaintiffs' claims neither directly nor indirectly seek payment from the United States, and as such, their claims fall outside of the Tucker Act's grant of jurisdiction.

A few cases, however, support the argument that a district court may have jurisdiction to consider a request for equitable relief on a Takings Claim if a claim for just compensation would not be available.[29]  Plaintiffs argue that such

---

[25] *United States v. Bormes*, 133 S. Ct. 12, 16–17 (2012) (internal quotations omitted).

[26] *Id.* at 16.

[27] *Id.* at 17.

[28] *Richardson v. Morris*, 409 U.S. 464, 465–66 (1973).

[29] *See E. Enterprises v. Apfel*, 524 U.S. 498 (1998); *Washington Legal Found. v. Texas Equal Access to Justice Found.*, 270 F.3d 180 (5th Cir. 2001) (holding prospective relief was appropriate when an action for just compensation was not available) *cert. granted, judgment*

is the case here.  Plaintiffs rely on the Supreme Court's decision in *Eastern Enterprises v. Apfel* in making their argument that a takings claim for just compensation is unavailable to them and therefore equitable relief is the appropriate remedy.

In *Eastern Enterprises*, the plaintiff argued that the payments required by the Coal Industry Retiree Health Benefit Act of 1992 (the "Coal Act") constituted an unconstitutional taking.[30]  The Coal Act required plaintiff to make payments to a privately-operated fund for the benefit of retired miners who had previously worked for the company when it was involved in the coal industry.[31]  The plaintiff did not seek just compensation, but rather, requested a declaratory judgment that the Coal Act violated the Constitution and a corresponding injunction against its enforcement.[32]  A plurality of the Supreme Court held that because the Coal Act mandated payments to be made to a privately-operated fund, monetary relief against the government was not a remedy that was available to plaintiff, and therefore equitable relief was an appropriate remedy.[33]  The Supreme Court reaffirmed its prior statement that "the Declaratory Judgment Act 'allows individuals threatened with a taking to see a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained.'"[34]

---

*vacated sub nom. Phillips v. Washington Legal Found.*, 538 U.S. 942 (2003) (holding no taking occurred).

[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.* at 521.
[34] *Id.*

Plaintiffs argue that this case is analogous to *Eastern Enterprises* because the Corps's Mitigation Requirement mandates that they pay funds to a third-party mitigation bank.  Defendants rebut this statement by arguing that it is the *levee contractor*, not Plaintiffs, who must purchase mitigation credits prior to excavating the borrow material from Plaintiffs' property.  The Environmental Report prepared by the Corps states that "[c]ompensatory mitigation is required to be completed prior to [environmental] impacts.  The *landowners or contractors* will accomplish compensatory mitigation through the purchase of mitigation bank credits at an appropriate mitigation bank . . . ."[35]  In the Suitability Determination, the Corps further states that it will "require verification *from landowners* that mitigation obligations have been met prior to excavation."[36]

Regardless, this Court fails to see how such a distinction disrupts Plaintiffs' argument.  Whether Plaintiffs or a third-party contractor pay funds to a third-party mitigation bank to purchase mitigation credits, an action for just compensation against the government would not be available to Plaintiffs.  Because Plaintiffs are required to pay those amounts to a party other than the government, they would be unable to seek repayment from the government if the Mitigation Requirement was a taking.  Like in *Eastern Enterprises*, the lack of a compensatory remedy renders equitable relief the appropriate remedy in this case.

Defendants attempt to make the distinction that the payments at issue in *Eastern Enterprises* were statutorily mandated by the Coal Act, whereas here

---

[35] Doc. 31-1.
[36] Doc 31-2.

mitigation credits need only be purchased if Plaintiffs seek to have their borrow material used in an HSDRRS project.  They argue that equitable relief is available only where Congress has affirmatively withdrawn the right to pursue an action for just compensation by statute.   In making this argument, Defendants rely on *Preseault v. I.C.C.*  In *Preseault*, the Supreme Court held that equitable relief was not available for claims arising out of the Amendments to the National Trails System Act because the Amendments did not exhibit an unambiguous intention to withdraw a Tucker Act remedy.[37]  This Court finds that the facts of *Preseault* are readily distinguishable from those presented here.

In *Preseault*, the plaintiffs challenged the Amendments to the Trails Act, which authorized the preservation of railroad tracks not currently in service and authorized the interim use of that land as recreational trails.[38]   The Amendments specified that those tracks-turned-trails were not to be treated as abandoned.[39]  The plaintiffs argued that this provision ran afoul of state laws that provide that property subject to a right-of-way easement, such as those used by many railroads, reverts back to the landowner upon abandonment.[40]  The plaintiffs argued that the provision of the Amendments that prevented these rights-of-way from being abandoned constituted a taking.[41]  The plaintiffs therefore sought a ruling that this portion of the Trails Act was a taking without

---

[37] *Preseault v. I.C.C.*, 494 U.S. 1 (1990).
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*

just compensation.[42]   The Supreme Court held that such an action was premature because the plaintiffs had not yet sought just compensation under the Tucker Act.[43]

In *Preseault*, there was no mechanism—established by statute or otherwise—that prevented the plaintiffs from seeking just compensation for the alleged taking from the government.  By contrast, the plaintiffs in *Eastern Enterprises* and here are prevented from seeking just compensation from the government because the payments of which they complain are required to be paid to third parties.  This is a wholly different situation than that set forth in *Preseault*. A Tucker Act remedy is not available to Plaintiffs and, therefore, whether Congress has withdrawn it is of no moment.  Accordingly, this Court relies on the Supreme Court's ruling in *Eastern Enterprises* "that it is within the district courts' power to award such equitable relief" in holding that it has jurisdiction over Plaintiffs' claims for injunctive and declaratory relief.

To the extent that this holding still raises questions as to the waiver of sovereign immunity, this Court additionally holds that the APA waives sovereign immunity for Plaintiffs' equitable claims under the Takings Clause. The APA states that:

> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.  An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or

---

[42] *Id.*
[43] *Id.* at 17.

employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party.[44]

Here, Plaintiffs seek declaratory and injunctive relief on the ground that the Corps's Mitigation Requirement constitutes an uncompensated taking. Plaintiffs claim that the Corps's actions have violated their right not to have property taken without just compensation.[45]  By its plain language, the APA waives sovereign immunity for this claim.  Plaintiffs allege the Corps—a government agency—has violated a legal right—the right not to have property taken without just compensation—and have requested equitable relief to remedy such.[46]

5 U.S.C. § 704 states, however, that the APA's waiver of sovereign immunity applies only when there is "no other adequate remedy."  "In effect, § 704 withdraws the limited waiver of immunity under [5 U.S.C.] § 702 if an

---

[44] 5 U.S.C. § 702.

[45] The phrase 'legal wrong' under the Act means the invasion of a legally protected right. *Braude v. Wirtz*, 350 F.2d 702 (9th Cir.1965).

[46] THOMAS W. MERRILL, ANTICIPATORY REMEDIES FOR TAKINGS, 128 HARV. L. REV. 1630, 1643–44 (2015) ("The problems, as always, arise in regulatory takings cases. With respect to the federal government, the APA contains a general waiver of sovereign immunity for actions seeking relief other than 'money damages.' Thus, insofar as one can seek declaratory or equitable relife [sic] for takings (the issue of this Essay), the APA clears the way for suits in federal courts of general jurisdiction. The Tucker Act, which authorizes suits against the United States founded 'upon the Constitution,' has been held to constitute a waiver of sovereign immunity for claims seeking compensation for takings. Because there is no other waiver of federal sovereign immunity for claims for compensation, sovereign immunity stands as a barrier to such claims outside the jurisdictional limits prescribed by the Tucker Act.").

adequate judicial remedy is already available elsewhere."[47] The question then becomes whether there is some other avenue through which Plaintiffs could seek an adequate remedy.  This Court has already established that no compensatory remedy is available to Plaintiffs.  Accordingly, § 704 does not prevent the APA's waiver of sovereign immunity from applying in this case.

Defendants next challenge Plaintiffs' Takings Claim on the merits.  They argue that Plaintiffs are not entitled to injunctive relief because they are not able to show a substantial threat of irreparable harm in light of the availability of an action for just compensation under the Takings Clause.  This Court dismisses this argument for the same reason it dismissed those made above. The provision under the Mitigation Requirement mandating that Plaintiffs (or their contractors) buy mitigation credits from third-party mitigation banks renders a claim for just compensation against the government unavailable. Accordingly, Plaintiffs are not forestalled from showing irreparable harm in seeking injunctive relief.  Plaintiffs' takings claims, therefore, survive.

### B. Substantive Due Process

Defendants next argue that Plaintiffs' substantive due process claim is "jurisdictionally barred as premature and is subsumed by their Takings Claim." The substantive due process clause "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them."[48] The Supreme Court has held that substantive due process should not apply

---

[47] *Consol. Edison Co. of New York v. U.S., Dep't of Energy*, 247 F.3d 1378, 1383 (Fed. Cir. 2001).

[48] *Zinerman v. Burch*, 494 U.S. 113, 125 (1990) (internal quotation marks omitted).

where another specific constitutional provision provides protection against the challenged governmental action.[49]  The Fifth Circuit, however, has rejected a blanket rule that the Takings Clause will always subsume a substantive due process claim relating to the deprivation of property.[50]  Instead, the Fifth Circuit has held that "a careful analysis must be undertaken to assess the extent to which a plaintiff's substantive due process claim rests on protections that are also afforded by the Takings Clause."[51]  "Except in the rare cases of deprivations of property based on, for example, illegitimate and arbitrary governmental abuse, vague statutes, or retroactive statutes, the takings analysis established by the Supreme Court and [the Fifth] circuit should control constitutional violations involving property rights that have been infringed by governmental action."[52]

Plaintiffs' due process claim alleges the following:

140. Application of a Mitigation Requirement to the impact on upland BLHs [Bottomland Hardwood Forest] of borrow mining, but not to any other upland borrow mining impacts, is an arbitrary deprivation of a property interest in violation of the Due Process Clause.

141. Characterization of the Idlewild Stage 2 tract as "bottomland hardwood forest" within the meaning of the WRDA arbitrarily expands jurisdiction in excess of statutory authority and deprives Plaintiff of a property interest in violation of the Due Process

---

[49] *Graham v. Connor*, 490 U.S. 386, 395 (U.S. 1989); *John Corp. v. City of Houston*, 214 F.3d 573 (5th Cir. 2000).

[50] *John Corp.*, 214 F.3d at 583.

[51] *Id.*

[52] *Simi Inv. Co. v. Harris Cty., Tex.*, 256 F.3d 323 (5th Cir. 2001).

Clause.

142. Imposition of the Credit Purchase Requirement when only costly wetlands credits are available, rather than allowing statutorily prescribed in-kind mitigation, is an arbitrary deprivation of a property interest in violation of the Due Process Clause.[53]

Plaintiffs seek "declaratory and injunctive relief from the Corps's arbitrary and irrational imposition of restraints that would deprive Plaintiffs of a property interest."[54]  Plaintiffs allege that this claim is not a takings claim because it does not presuppose lawful government action but instead complains of arbitrary and irrational governmental action.  Defendants rebut that these allegations are the same facts that support Plaintiffs' takings claim—the parties' disagreement over the Corps's interpretation of the mitigation required under the WRDA as it applies to Idlewild Stage 2.  This Court agrees.  These facts are not in line with those cases in which the Fifth Circuit has allowed a substantive due process claim to subsist independently of a takings claim.[55]  Plaintiffs do not allege that a statute is unconstitutionally vague or that the government has abused its power in some way.  Plaintiffs' substantive due process claims amount to a disagreement over the Corps's decisions regarding mitigation.  Their takings claim is sufficient to address these concerns.  Accordingly, Plaintiffs' substantive

---

[53] Doc. 31, p. 31.

[54] Doc 85, p. 14.

[55] *See John Corp.*, 214 F.3d at 583 (holding that although Takings Clause claim was not ripe, plaintiffs could pursue substantive due process claim based on allegations that demolition of buildings was carried out under unconstitutionally vague laws)*; Simi Inv. Co.*, 256 F.3d 323 (5th Cir. 2001) (holding that plaintiff had alleged illegitimate governmental conduct sufficient to support a substantive due process claim when he alleged that the defendant had created a "nonexistent park" to benefit private interests).

due process claims are dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion is GRANTED IN PART, and Plaintiffs' substantive due process claims are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 28th day of January, 2016.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

17