## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WHITE OAK REALTY, LLC**                              **CIVIL ACTION**


**VERSUS**                                                  **NO: 13–4761**


**UNITED STATES ARMY CORP**
**OF ENGINEERS, ET AL.**                              **SECTION "H"(3)**


## ORDER AND REASONS

Before the Court is Defendants' Motion for Summary Judgment (Doc. 185).  For the following reasons, the Motion is GRANTED.


## BACKGROUND

This is a civil action for declaratory and injunctive relief.  The plaintiffs are White Oak Realty, LLC and Citrus Realty, LLC.  The defendants are the United States Corps of Engineers (the "Corps") and various Corps employees. The dispute involves mitigation requirements imposed by the Corps on a tract of land in Southeast Louisiana ("Idlewood Stage 2"), jointly owned by Plaintiffs.

In response to the devastation caused by Hurricanes Katrina and Rita, Congress authorized the Corps to undertake a series of projects collectively known as the Hurricane and Storm Damage Risk Reduction System

1

("HSDRRS").  One of these projects involves the use of soil and clay ("borrow material") to reinforce levees and floodwalls in the Gulf South.  In order to respond to the unprecedented amount of borrow material needed for this project, the Corps instituted the contractor-furnished borrow program.  The contractor-furnished borrow program allows landowners to have their land pre-qualified as a suitable source for borrow material based on certain requirements. [1]  These government-approved properties are then placed on a list for selection as supply sources by contractors working on the levee project. Contractors may then select a borrow supplier from that list, and the borrow is excavated for use on the Corps's projects.

 At some point in 2010, Plaintiffs discovered the presence of borrow material on their property.   They subsequently filed a "suitability determination" with the Corps to confirm the borrow material could be used in HSDRRS projects.   Some of the property (Idlewild Stage 1) was quickly qualified and clay mining began.  On other portions (Idlewild Stages 2 and 3), the Corps approved the land's use for borrow material but found that the excavation of borrow material would cause "unavoidable impacts" to the bottomland hardwood ("BLH") forests on the property, and therefore mitigation would be required.  In addition, the portions of the land that were wetlands were excluded from excavation.  Plaintiffs, therefore, sought to mine clay only from the uplands portions of Idlewild Stage 2 and that area was later cleared of the BLH forest.

In a letter dated November 4, 2010, the Corps notified Plaintiffs that Idlewood Stage 2 "appears to be acceptable for use as a source" of borrow material.  The letter confirmed the preliminary report's determination that excavation would harm the environment.   The letter required "proof of

---

[1] Doc. 115-4, p. 12.

mitigation to the Corps[] . . . prior to excavation." The Corps issued a similar letter on April 14, 2011, reaffirming the requirement that the impacts to the BLH forests on the land be mitigated. The letter informed Plaintiffs that their "compensatory mitigation requirements may be met" by obtaining credits from select mitigation banks.

Plaintiffs subsequently hired Mitigation Strategies, LLC ("Mitigation Strategies") hoping to convince the Corps of the "legal and factual errors underlying [its] mitigation requirements." Mitigation Strategies argued to the Corps on numerous occasions that mitigation was neither necessary nor appropriate under the law. In the alternative, if mitigation was required, Mitigation Strategies argued the law required in-kind mitigation, rather than the purchase of credits from mitigation banks.

The Corps disagreed. A February 20, 2013 letter from the District Commander reiterated the Corps's position that if borrow material from Idlewood Stage 2 is used in connection with the HSDRRS project, the impacts to the BLH forests on that land must be mitigated (the "Mitigation Requirement"). It further confirmed the Corps's position that such mitigation must occur through the purchase of mitigation bank credits (the "Purchase Requirement").

As a result of the Corps's position, Plaintiffs filed this suit, arguing that the Water Resource Development Act of 2007 ("WRDA"), 33 U.S.C. § 2201 et seq., does not require mitigation for Idlewood Stage 2 or alternatively, that the WRDA does not authorize the Corps to mandate the purchase of mitigation credits as the sole form of compensatory mitigation. This Court has previously dismissed all of Plaintiff's claims on summary judgment, save a regulatory takings claim. Defendant has filed the instant Motion for Summary Judgment seeking dismissal of that remaining claim.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2]  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[4]  "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[5]  Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[6]  "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[7]  "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the

---

[2] Fed. R. Civ. P. 56(c) (2012).
[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[4] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532 (5th Cir. 1997).
[5] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).
[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).
[7] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

necessary facts."[8]   Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[9]

## LAW AND ANALYSIS

### I.   Procedural History

As a threshold matter, Plaintiffs dispute the appropriateness of considering Defendants' second motion for summary judgment.  They argue that Defendants' motion is improper under the scheduling order and should be considered under the standard of a motion for reconsideration.

This case has followed an unusual procedure.  Initially, the Court set a scheduling order establishing a trial date, as well as a deadline for non-evidentiary pre-trial motions.  After the parties filed a motion for judgment on the pleadings and cross-motions for summary judgment, however, the Court vacated the scheduling order pending resolution thereof.[10]  The parties moved for summary judgment on all claims except the regulatory taking claim at issue herein.  The Court granted summary judgment in Defendants' favor and dismissed all of Plaintiffs' claims, save their regulatory takings claim. Thereafter, a scheduling conference was held to select a trial date upon which to try Plaintiffs' remaining claim.  In addition to a trial date, the Court set a new discovery deadline and pre-trial motion deadline as well.  Thereafter, the parties conducted discovery, and Defendants filed the instant motion for summary judgment within the deadline set by the Court.[11]   Defendants argue

---

[8] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).
[9] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[10] Doc. 140.
[11] Defendants requested a one week extension from the date originally set in the scheduling order. Doc. 178.

that the deposition testimony obtained after their first motion for summary judgment was important in making their arguments in the instant motion.

"Courts have found that a subsequent summary judgment motion based on an expanded record is permissible."[12]  The Fifth Circuit has stated that such a determination is in the district court's discretion.[13] "That discretion may be exercised whether or not new evidence is submitted with the subsequent motion."[14]  This Court, therefore, finds it appropriate to allow Defendants' successive summary judgment motion.   Defendants move for summary judgment on a claim not yet addressed by this Court after additional discovery and within the deadlines set by the Court's revised scheduling order.  It is in the interest of efficiency to review Defendants' motion in lieu of proceeding directly to a potentially unnecessary trial.  Accordingly, this Court rejects Plaintiffs' procedural objections and proceeds to the merits of Defendants' motion.

## II.    Defendants' Arguments for Dismissal

 The Fifth Amendment of the Constitution prohibits the government from taking private property without just compensation.  "A 'taking'" may occur either by physical invasion or by regulation."[15]  In Plaintiffs' remaining claim, they assert that the Purchase Requirement constitutes a regulatory taking.  Plaintiffs seek equitable relief—namely, exclusion from the Purchase Requirement.   Under the Supreme Court's decision in *Penn Central Transportation Co. v. City of New York*, three key factors' guide the regulatory taking analysis: "(1) the economic impact on the claimant; (2) the extent of

---

[12] *Enlow v. Tishomingo Cty., Miss.*, 962 F.2d 501, 506 (5th Cir. 1992).

[13] *Id.*

[14] *Johnson v. PPI Tech. Servs., L.P.*, 605 F. App'x 366, 367 (5th Cir. 2015).

[15] *Hearts Bluff Game Ranch, Inc. v. United States*, 669 F.3d 1326, 1328 (Fed. Cir. 2012).

6

interference with the claimant's investment-backed expectations; and (3) the character of the government's action."[16] "The Fifth Circuit has explained that '[i]n order for regulatory action to rise to the level of an unconstitutional taking, there must be a complete deprivation of the owner's economically viable use of his property.'"[17] Before a takings claim can be considered, however, a court must determine whether the plaintiff holds a property interest that is protected by the Fifth Amendment.[18] Defendants allege that Plaintiffs cannot succeed on their regulatory takings claim either because this Court lacks jurisdiction over the claim or because Plaintiffs lack a compensable property interest in the property allegedly taken. This Court will consider each argument in turn.

A. *Jurisdiction*

At the outset, Defendants reassert many of the arguments previously made in their Motion for Judgment on the Pleadings alleging that this Court lacks jurisdiction to hear Plaintiffs' takings claim. Defendants argue that Congress has not withdrawn Tucker Act jurisdiction over Plaintiffs' claims, and thus Plaintiffs' claims should be brought in the United States Court of Federal Claims. This Court has already addressed these arguments, and Defendants' renewed objection to jurisdiction does not dissuade this Court from its prior holding. Accordingly, this Court again holds that it has jurisdiction to hear Plaintiffs' takings claims for the reasons stated in Record Document 142.

---

[16] *Hackbelt 27 Partners, L.P. v. City of Coppell*, 661 F. App'x 843, 850 (5th Cir. 2016).

[17] *Laredo Rd. Co. v. Maverick Cty., Texas*, 389 F. Supp. 2d 729, 739 (W.D. Tex. 2005) (quoting *Matagorda County v. Russell Law*, 19 F.3d 215, 223 (5th Cir. 1994)).

[18] *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001 (1984).

### B. Compensable Property Interest

Next, Defendants argue that Plaintiffs lack a compensable property interest in the property that they allege was taken.  At the outset, the parties dispute the nature of Plaintiffs' takings claim.   Defendants characterize Plaintiffs' claim as alleging a taking of the clay itself as well as the business opportunity to sell the clay as part of the HSDRRS project.  They argue that Plaintiffs' ownership of Idlewild Stage 2 does not give them a right to insist that their clay be purchased by the Corps, to demand they be exempt from the Purchase Requirement, or to dictate the terms of the Corps's contracts.

Plaintiffs, on the other hand, characterize their claim as one for a loss of rights in an existing asset. They argue that their right to mine the borrow material from Idlewild Stage 2 is inherent in their interest in the property and that the Purchase Requirement destroyed the right to realize profits from that material.  Plaintiffs argue that ownership "means that a landowner has the right to exercise those property rights that are inherent in ownership, such as mining and realizing the value of sub-surface minerals, and it is that interest that Defendants have destroyed in this case."

"Property interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."[19]   In order to identify the "existing rules," a court must identify "the group of rights" inhering to a party's relation to a physical thing.[20]

> [U]nder Louisiana law, the essential features of the "bundle of rights" commonly characterized as "property" are: (1) usus—the right to use or possess, i.e., hold, occupy, and utilize the property; (2) abusus—the right to abuse or alienate, i.e., transfer, lease, and encumber the property, and (3) fructus—the right to the fruits, i.e.,

---

[19] *Id.*
[20] *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 269 (5th Cir. 2012).

to receive and enjoy the earnings, profits, rents, and revenues produced by or derived from the property.[21]

Under Louisiana law, the borrow material on Idlewild Stage 2 is a "product." Products are things the production of which result in the diminution of the property.[22] Products belong to the owner of the property.[23] The Court therefore agrees that Plaintiffs have a right to and interest in the products of Idlewild Stage 2—that is, they have a right to receive earnings from the borrow material derived from the property. The Purchase Requirement, however, does not destroy Plaintiffs' right to the products of the land as Plaintiffs allege. The requirement does not affect their right to mine and sell the borrow material on their property. Rather, Defendants' characterization is more fitting—the Purchase Requirement resulted in the taking of a business opportunity. Specifically, the Purchase Requirement lessened the value of the sale of the borrow material for use on the HSDRRS project. The law is clear that such is not a compensable property interest. "The sovereign must only pay for what it takes, not an opportunity the owner loses."[24]

In *Hearts Bluff Game Ranch v. U.S.*, the plaintiff alleged a taking when the Corps denied it a permit to create a mitigation bank on its property.[25] The Federal Circuit Court held that the plaintiff did not have a compensable property right in obtaining a mitigation bank permit.[26] It stated that even without the permit, the plaintiff was "still able to sell, assign, or transfer the land, or exclude others from its use, as it always was able to do."[27] The court

---

[21] *Id.*
[22] La. Civ. Code art. 488.
[23] *Id.*
[24] *Allain-Lebreton Co. v. Dep't of Army, New Orleans Dist., Corps of Engineers*, 670 F.2d 43, 45 (5th Cir. 1982).
[25] *Hearts Bluff Game Ranch, Inc.*, 669 F.3d at 1328.
[26] *Id.* at 1331–32.
[27] *Id.* at 1331.

9

went on to say that it has "rejected claims of a cognizable property interest in government programs where the government has discretionary authority to deny access to that program."[28]

In *Schooner Harbor Ventures, Inc. v. U.S.*, the plaintiff alleged a takings claim when it was required to give seventy-seven acres of property to the Fish and Wildlife Service ("FWS") to be used as a wildlife refuge in order to sell another parcel of land to the U.S. Navy.[29]  The plaintiff alleged that "it could not sell to the Navy without meeting the Navy's conditions, and that FWS's determination of the scope of those conditions constitutes a taking."[30]  The Federal Circuit Court agreed with the lower court's decision that the plaintiff did not have a compensable right to sell its property to the United States without any conditions imposed upon the sale.[31]  It noted that the conditions did not attempt to limit to whom plaintiff sold the property.  "[T]he only possible direct limitation on its right of alienation was . . . the inability to sell [to the Navy] without conditions."[32]

As in these cases, here, the only limitation on Plaintiffs' right to sell the borrow material on its property is the condition that it is required to purchase mitigation credits if the borrow will be used in the HSDRRS project.  The imposition of this condition is in the Corps's sole discretion, and it does not destroy any of the "bundle of rights" that Plaintiffs have in owning the land. Plaintiffs are still entitled to mine and sell the borrow material on their property.  Accordingly, Plaintiffs do not have a compensable property interest

---

[28] *Id.*

[29] *Schooner Harbor Ventures, Inc. v. United States*, 569 F.3d 1359, 1361 (Fed. Cir. 2009).

[30] *Id.* at 1364.

[31] *Id.* The court went on to say that the district court erred in not focusing on the plaintiff's right to develop its land without restriction.

[32] *Id.*

10

in selling their borrow material for use in the HSDRRS without satisfying the Purchase Requirement.[33] They therefore cannot succeed on their regulatory takings claim, and the claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED, and Plaintiffs' claims are DISMISSED WITH PREJUDICE.


New Orleans, Louisiana, this 28th day of March, 2017.

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[33] Defendants also argued that Plaintiffs did not even own the borrow material on Idlewild Stage 2 at the time of the alleged taking.  However, in light of its holding, this Court need not address this argument.

11